UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KRISTOPHER S. STARKGRAF,<br><br>            Plaintiff,<br><br>   v.<br><br>WHITE et al.,<br><br>            Defendant. | CASE NO. 3:23-cv-05593-DGE<br><br>ORDER GRANTING WRIT OF HABEAS CORPUS AD TESTIFICANDUM (DKT. NO. 86) |

## I    INTRODUCTION

This is a prisoner civil rights case under 42 U.S.C. § 1983 involving a pre-trial detainee who alleges excessive force by a guard at the Pierce County Jail.  (*See* Dkt. No. 10 at 33–41.) Plaintiff's underlying criminal case has been repeatedly delayed, resulting in this case coming to this Court while Plaintiff remains in custody of Pierce County.  (*See* Dkt. No. 86 at 6.)  Presently before the Court is Plaintiff's motion for a writ of habeas corpus ad testificandum to appear and testify at his trial.  (Dkt. No. 86.)  Defendants argue that Plaintiff's presence is unnecessary when videoconferencing is available and would impose burdens on them.  (*See* Dkt. No. 88.)

Moreover, Defendants advance a novel argument, that they would have no jurisdiction to maintain custody of Plaintiff while he appears in federal court. (*See id.* at 1, 3, 5; *see also* Dkt. No. 94 at 2.) Plaintiff makes further requests regarding the terms of his appearance, including that he be permitted to wear civilian clothes and that he not be restrained in view of the jury. (Dkt. No. 86 at 5.)

The Court finds that Plaintiff's presence for live testimony at his trial would help further resolution of the case, that his presence would not pose any undue security risk or burden, and that Defendants' jurisdictional arguments are without legal basis. However, the Court finds that Plaintiff's physical presence is not necessary on days he is not testifying. Accordingly, the writ is GRANTED IN PART, and the Court will order Plaintiff to be present for day two of the trial, when he will testify in his case in chief. The Court further specifies the terms of Plaintiff's appearance.

## II    BACKGROUND

Plaintiff alleges that Officer Anthony White used excessive force in applying handcuffs in retaliation for Plaintiff talking back to him, resulting in injury. (*See* Dkt. No. 10 at 33–41.) A medical evaluation after this incident showed swelling and tenderness on his wrist. (Dkt. No. 37 at 4.) Previously, this Court (Bryan, J.) adopted a Report and Recommendation granting summary judgment against Plaintiff on numerous other claims, but allowing this excessive force claim to proceed to trial. (*See* Dkt. Nos. 65, 71.) [1]

Plaintiff moves for a writ of habeas corpus compelling his custodian to produce him to this Court for attendance at his trial. (Dkt. No. 86.) He argues that his presence will further the

---

[1] Plaintiff's claim based on Officers Place, Avega, and Anton's alleged failure to intervene in this excessive force also survived summary judgment, but Plaintiff voluntarily dismissed those defendants (*see* Dkt. No. 92), so only the claim against Officer White remains.

1  resolution of the case because his testimony is the primary evidence in the case and the verdict

2  will turn on the jury's perception of witness credibility.  (*Id.* at 3–4.)  He argues that he poses no

3  heightened security risk, because the only infractions he has had in custody are minor, such as a

4  contraband infraction for keeping an "extra towel, extra mattress cover, [and] food from previous

5  meals" in his cell.  (*Id.* at 4–5.)  Plaintiff requests that he be permitted to wear civilian clothing at

6  his trial and to bring a box of legal materials.  (*Id.* at 5.)  He asks that he be permitted to sit next

7  to his counsel at the counsel table.  (*Id.*)  He requests that he not be shackled in view of the jury

8  to prevent prejudice; however, he is amenable to wearing an ankle restraint while seated at the

9  counsel table, if both counsel tables are skirted such that the jurors will be unable to see his legs.

10  (*See id.*)  He likewise requests that he not be escorted by law enforcement in view of the jury.

11  (*Id.*)

12      Additionally, Plaintiff argues that the costs of his appearance would be negligible.  The

13  Pierce County Main Jail is located less than a mile from this courthouse and so he would not

14  need to be separately housed during trial, which is expected to last 2–3 days.  (*Id.* at 6.)

15  Whatever costs exist, he argues, should be allocated to Pierce County.  (*Id.*)  Finally, Plaintiff

16  argues that it would be unreasonable to delay this trial until his underlying criminal matter is

17  adjudicated.  As of the filing of Plaintiff's motion, his criminal trial was set for April 22, 2025,

18  and had previously been continued eight times.  (*Id.*)  A search of the docket in his criminal case

19  however reveals that his trial has again been continued and is now scheduled for July 9, 2025—

20  falling after the trial date in this matter.  *See* Pierce Cty. Sup. Ct., Dkt. No. 23-1-00685-4.

21      Defendants object to producing Plaintiff for this civil trial.  They argue that his presence

22  would not facilitate resolution of the case when he could participate via videoconference, and

23  that courts in this district have previously found no prejudice necessitating a new trial when

24

incarcerated plaintiffs have participated remotely in § 1983 trials.  (*See* Dkt. No. 88 at 4, citing *Thompson v. Hicks*, No. C08-1065-JCC, 2012 WL 12874936, at *1 (W.D. Wash. Sept. 4, 2012)).  Staffing at the jail is also limited and transporting Plaintiff to the court would take staff away from duties at the jail.  (*Id.* at 5.)  Further, Defendants argue that Plaintiff is a security risk; he has been charged with Robbery in the First Degree, Assault in the Second Degree, and criminal failure to stop, e.g. hit and run.  (*Id.* at 3, 5.)  Typical protocol at the jail, Defendants say, is that neither inmates nor individuals on the outside know the dates and locations of transports.  (*Id.* at 5.)  Defendants also object to Plaintiff wearing civilian clothing during the trial, noting that it "raises concerns regarding escape and identification problems" and poses a risk of contraband. (*Id.* at 3.)

Finally, Defendants argue that because state law defines a "corrections officer" as someone who "provide[s] for the custody, safety, and security of adult persons *in jails and detention facilities* in the state," maintaining custody of an inmate in a federal courthouse is beyond the authority and remit of a county corrections officer.  (*Id.* at 5); Wash. Rev. Code § 43.101.010(6) (emphasis added).  During a status hearing on April 7, 2025, Defendants continued to advance this argument and urged the Court to strongly consider it when ruling on this petition.  (*See* Dkt. No. 93.)

After briefing on this matter concluded, Defendants supplemented the record with a disciplinary incident involving Plaintiff not previously disclosed.  In May 2024, Plaintiff mailed a book to a former coworker; according to a jail incident report, "the cover sheet [of the book] had blood on it and a thumb or toenail had been taped inside of it."  (Dkt. No. 94-1 at 2.) Further, the book was marked as "legal mail."  (*Id.*)  A corrections officer confronted Plaintiff about the mailing, and he confessed to sending the book with blood and a fingernail and

1    erroneously marking it as legal mail so it would not be opened.  (*Id.*)  He became frustrated and

2    cursed at the woman who was the subject of the mailing.  (*See id.*)  Plaintiff responds that he

3    took responsibility for his actions, that there was no repeat conduct of this type, and no sanction

4    was applied.  (Dkt. No. 96 at 2.)  Plaintiff further argues that Defendant has not shown any

5    connection between this incident and his upcoming trial that indicates a security risk for the trial.

6    (*See id.*)

7          After this Court indicated at the April 7 status hearing that it was inclined to grant the

8    writ, Defendants requested that Plaintiff's appearance be limited only to trial testimony.  (Dkt.

9    No. 94 at 4.)  Plaintiff responds that limiting his presence to his testimony is not necessary

10   because the trial is already set for just 2–3 days, and it would be impractical because he may

11   choose to offer rebuttal testimony.  (Dkt. No. 96 at 2.)  Defendants further request that "an

12   indemnification clause by the United States in favor of Pierce County be added to the writ should

13   Pierce County be ordered to provide security at the federal courthouse."  (Dkt. No. 94 at 4.)

## III        DISCUSSION

### A.  Legal Standards

16         In general, "a prisoner has no constitutional right of access to the courts to litigate civil

17   claims unrelated to his conviction or the conditions of his confinement."  *Janahi v. Zuberi*, No.

18   221CV03975VAPPLAX, 2022 WL 20217502, at *1 (C.D. Cal. Sept. 27, 2022); *see also*

19   *Simmons v. Sacramento Cnty. Superior Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003).  However, the

20   Ninth Circuit has articulated circumstances under which it would be appropriate for a district

21   court to order a confined plaintiff's presence at a civil trial:

22         When determining whether it should issue a writ of *habeas corpus ad testificandum* in
           such instances, the district court must exercise its discretion based upon consideration of
23         such factors as whether the prisoner's presence will substantially further the resolution of
           the case, the security risks presented by the prisoner's presence, the expense of the

24

prisoner's transportation and safekeeping, and whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted.

*Wiggins v. Alameda Cnty.*, 717 F.2d 466, 468 n.1 (9th Cir. 1983) (quoting *Ballard v. Spradley,* 557 F.2d 476, 480 (5th Cir.1977)).  Further, in the absence of a statute requiring the United States to transport the prisoner, the state remains liable for those expenses.  *See id.* at 469.

As to use of restraints, the Ninth Circuit has held that restraints can prejudice a plaintiff, especially where a central issue in his civil trial is dangerousness or flight risk, and use of restraints therefore requires a "showing of sufficient need."  *Claiborne v. Blauser*, 934 F.3d 885, 890 (9th Cir. 2019); *Tyars v. Finner*, 709 F.2d 1274, 1284–1285 (9th Cir. 1983).  The court has analogized to criminal cases and "recognized that the prohibition against routine visible shackling applies even when the presumption of innocence does not, including in the civil context."  *Claiborne*, 934 F.3d at 895.  The determination of necessity involves "any showing that less restrictive means not embodying the same potential for prejudice could have maintained order in the courtroom."  *Id.* at 896 (quoting *Tyars*, 709 F.2d at 1285).  The fact that a plaintiff is a convicted felon is not by itself enough to show necessity (even on a murder conviction), and the court must instead look to any evidence that the plaintiff "disrupted court proceedings, acted disrespectfully in court, or attempted to escape."  *Id.* at 898.  In the event that restraints are used, "the court must take steps to minimize prejudice resulting from the presence of the restraints." *Id.* at 897.

**B.  Analysis**

1.  <u>The Court Will Issue the Writ to Compel Plaintiff's Attendance, But Only on Day Two of the Trial, When He Will Testify</u>

The Court starts with analysis of the four *Wiggins* factors.  First, the Court finds that Plaintiff's attendance at trial will help facilitate resolution of the case.  As Plaintiff indicates, this

case will turn on the jury's evaluation of his credibility.  The primary (or only) evidence for Plaintiff's case in chief will be his testimony and medical or incident reports; there has been no indication in the record that video of the incident is available or has been produced.  *Contra Payment v. Pugh*, No. 3:22-CV-05569-TL-GJL, 2024 WL 729278, at *2 (W.D. Wash. Feb. 22, 2024) (finding that in person testimony by plaintiff was not necessary where jury had video evidence of incident to review).  Here, live testimony will allow the jury to evaluate Plaintiff's body language, expressions, and demeanor in a manner that videoconferencing can only partially replicate.  *See Ballard*, 557 F.2d at 480 (5th Cir. 1977) ("when the file and record require the district court to make credibility choices, the petitioner is entitled to a day in court with live testimony.").  Additionally, the Court has appointed Plaintiff counsel (*see* Dkt. No. 80), and in-person appearance will facilitate in-trial communication between Plaintiff and his counsel.

That said, the Court finds that Plaintiff's in-person appearance will most facilitate case resolution when he is called to offer testimony in his case in chief.  There is little or no need for his presence on the first day of trial, when the Court will conduct virtual voir dire.  And if Plaintiff choses to offer rebuttal testimony, he can offer that testimony (which is likely to be quite short) via videoconference.  Put simply, the Court believes that the interest in Plaintiff's presence is strongest for his testimony in his case in chief, justifying the costs and burdens of bringing him to court, but weaker as to other aspects of the trial.  The Court will order Defendants to provide videoconference access to Plaintiff for the other days of the trial so that he can observe and communicate with counsel.  The Court has recent experience with this hybrid-remote approach and intends to follow that precedent.  *See Ejonga v. Watanabe*, Case No. 2:21-cv-01004-DGE (W.D. Wash. Nov. 1, 2024), Dkt. No. 178 (granting stipulated habeas writ to

1    produce state-incarcerated plaintiff for two days of a four-day trial, and to provide video

2    participation for other trial days).

3        Second, the Court does not find that Plaintiff presents a heightened security risk "beyond

4    what is typical for a state prisoner." *Smith v. Washington*, No. 321CV05636TMCBAT, 2024

5    WL 992610, at *3 (W.D. Wash. Feb. 23, 2024).  Plaintiff has presented evidence that he has only

6    been subject to minor non-violent infractions in his time in custody. (*See* Dkt. No. 87).[2]  The

7    Court finds the blood-and-fingernail incident disclosed by Defendants to be disturbing but agrees

8    with Plaintiff that it appears to be an isolated incident directed at a particular individual that is

9    unlikely to be predictive of how he would behave in court for this trial.  Moreover, Defendants

10   had every opportunity to disclose records of that incident when they initially provided a copy of

11   Plaintiff's jail file to his counsel and failed to do so, somewhat diminishing the notion that it is a

12   severe incident warranting immediate attention.  While Plaintiff has been charged with serious

13   violent offenses including assault and hit and run, he remains in pre-trial custody and has not

14   been convicted of these offenses.  Plaintiff is classified as a "level 4" inmate, meaning he is

15   "medium" security.  (Dkt. No. 86 at 4.)  Plaintiff has no felony conviction history.  (Dkt. No. 96

16   at 2.)  On this record, the Court does not find that Plaintiff is such a heightened security risk that

17   his presence at his civil trial would compromise court safety or impose substantial security

18   burdens—especially for just one trial day.

19   _____

20   [2] Plaintiff produced a jail incident log for August 11, 2024, in which his name was included on a
     list among many others (whose names were redacted).  (*See* Dkt. No. 87 at 6–7.)  A note on this
21   log describes an incident in which a metal shank was found in an air vent in a shared laundry
     room, but there is no indication as to which specific inmate was responsible.  (*Id.* at 7.)  The
22   same note explains that after the shank was identified, everyone on the tier was searched, and
     some were found to have "[n]uisance contraband" including "trash and saved food."  (*Id.*)
23   Plaintiff received a citation for "contraband/weapons" on August 11, 2024, but no sanction.  (*Id.*
     at 4.)  During the hearing on April 7, 2025, the Court inquired whether there was any evidence
24   that Plaintiff was connected to the shank incident, and Defendants indicated there was none.

Third, the Court finds that expenses of bringing Plaintiff to the courthouse for one day of trial would be minimal.  As Plaintiff indicates, he is incarcerated less than a mile from the federal courthouse and would not need special housing to be transported here.  This is unlike cases in this district where courts have found that the expenses of transporting and housing an incarcerated plaintiff for a civil trial over long distances would outweigh any benefits of his testimony.  *See Ewalan v. Washington State Dep't of Corr.*, No. C20-5678JLR, 2023 WL 6460985, at *2 (W.D. Wash. Oct. 4, 2023), *reconsideration denied,* No. C20-5678JLR, 2023 WL 6626108 (W.D. Wash. Oct. 11, 2023) (transporting plaintiff from Washington State Penitentiary at Walla Walla, "over 250 miles from the United States Courthouse in Seattle" would cause DOC to "incur substantial expenses" in transporting and housing him); *Payment*, 2024 WL 729278 at *2 & n.3 (plaintiff was either going to be transferred to custody out of state in Oregon, or would be in a WSP facility a minimum of 120 miles from the courthouse).  Plaintiff correctly notes that Defendants have not provided evidence of their anticipated costs.  (Dkt. No. 96 at 3.) Still, the costs of transporting Plaintiff here are not zero, and the Court is sensitive to Defendants' staffing concerns.  Nonetheless, the Court finds that "the cost of transporting and safekeeping [Plaintiff] is acceptable."  *Smith*, 2024 WL 992610 at *3.  By limiting Plaintiff's in-person appearance to the day he is testifying, the Court is further limiting the costs that Defendants will incur, and imposing costs only where Plaintiff's interest in personal appearance is at its zenith.

Finally, the Court finds that staying this suit until resolution of Plaintiff's criminal matter would be unreasonable, given how many times his criminal case has been continued.  Indeed, it appears his criminal case has been stayed again even as this habeas petition has been pending.

ORDER GRANTING WRIT OF HABEAS CORPUS AD TESTIFICANDUM (DKT. NO. 86) - 9

1    *See* Pierce Cty. Sup. Ct., Dkt. No. 23-1-00685-4.  With no certainty as to when (or if) Plaintiff's

2    criminal trial will occur, the Court sees no good cause to delay resolution of this matter.

3          For those reasons, all four *Wiggins* factors weigh in favor of issuance of the writ.

4          2.  <u>Defendants' Jurisdictional Arguments Are Without Merit</u>

5          The Court addresses an additional argument advanced by Defendants: that the Court

6    cannot order them to take custody of Plaintiff at the federal court, or that it would be

7    inappropriate to do so, because county deputies have limited authority that does not extend to

8    federal court.  The argument is hard to follow and reflects a fundamental misunderstanding of the

9    habeas writ.  Habeas runs against the <u>custodian</u>, which is "'the person' with the ability to

10   produce the prisoner's body before the habeas court," usually "the warden of the facility where

11   the prisoner is being held."  *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).  In this case, the

12   warden is the Pierce County <u>Sheriff</u>, not any particular correctional deputy.  (*See* Dkt. No. 96 at

13   3.)

14         The Supreme Court has held that district courts do not have authority to compel the

15   United States Marshals Service to take custody of a county inmate to transport them to federal

16   court for trials under § 1983.  *Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474

17   U.S. 34, 35 (1985).  That is because the habeas writ may be "properly directed <u>only to the</u>

18   <u>custodian</u>" and "there [is] no basis in the habeas corpus statute for the District Court's authority

19   to direct a writ *ad testificandum* to a noncustodian."  *Id.* at 38 (emphasis added).  However,

20   federal courts of appeal have distinguished between custody for *transport* and custody *during*

21   *trial*—and held that district courts have discretion to order the United States Marshals to take

22   custody of the state inmate only for the latter.  *Garland v. Sullivan*, 737 F.2d 1283, 1287 (3d Cir.

23   1984), *aff'd sub nom. Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34

24

(1985); *see also Rivera v. Santirocco*, 814 F.2d 859, 862 (2d Cir. 1987) (following *Garland*).

That is because under 28 U.S.C. § 566(b), "the United States marshal of each district . . . may, in the discretion of the respective courts, be required to attend any session of court."  But *Wiggins* holds that it was not abuse of discretion to order the state to bear *all* costs of bringing a state inmate to federal court to testify, and that there must be statutory authorization for a court to order the United States to reimburse the state, of which there is none.  717 F.2d at 469.[3]

In sum, the Court does have discretion to order the U.S. Marshals to take custody of Plaintiff during trial only, but there is no abuse of discretion to require the state (or here, Pierce County) to "transport and guard" Plaintiff at its own expense.  *Id.*  At this point, the Court does not find there is good cause to require the Marshals to take custody of Plaintiff, since as a county inmate, Pierce County maintains primary responsibility for his security, wherever he is.  *See e.g. id.* at 467 (affirming an order for the state to "transport, <u>guard</u>, and pay all expenses with securing the presence of [plaintiff], a state prison inmate, <u>at the trial</u> of his federal civil rights suit against the County of Alameda.")  Rather, the Pierce County Sheriff will maintain custody but should coordinate Plaintiff's presence in this courthouse with the United States Marshals.  *See Ejonga*, Case No. 2:21-cv-01004-DGE, Dkt. No. 178 (ordering the superintendent of the Stafford Creek Corrections Center to "[m]ake security arrangements for [plaintiff] during the trial in coordination with the United States Marshals Service.").

By contrast, Defendants' citations to the Washington Revised Code and arguments about the authorities of county corrections deputies are inapposite.  First, Defendants cite the wrong state laws.  The Pierce County Sheriff is in charge of the County Jail.  *See* Pierce County Code §

---

[3] Likewise, Defendants cite no authority by which this Court could order the United States to indemnify them for any loss caused by Plaintiff in the federal courthouse, and the Court will not do so.

1   2.06.020(D)(3) (creating a Corrections Bureau within the Office of the Sheriff, "which is

2   responsible for the security, care, and custody of pretrial and committed offenders.")  Thus, the

3   Court's order runs against the Pierce County <u>Sheriff</u>, not a corrections deputy, so the statutory

4   definition of "corrections officer" under Washington Revised Code § 43.101.010(6) is not

5   relevant, nor is the status of state corrections officers as "limited authority Washington peace

6   officers."  Wash. Rev. Code. §§ 10.93.020(5); 10.93.020(6).  Rather, the Sheriff's Department

7   would appear to be a "General authority Washington law enforcement agency," as defined in

8   Washington Revised Code § 10.93.020(3), and sheriffs have the power to "arrest and commit to

9   prison all persons who break the peace" and to "execute the process and orders of the courts of

10  justice or judicial officers."  Wash. Rev. Code. § 36.28.010.  Further, "a sheriff in Washington

11  has jurisdiction to enforce state criminal law *anywhere* within the boundaries of his or her

12  county." *State v. Knight*, 904 P.2d 1159, 1165 (Wash. Ct. App. 1995) (emphasis added).  Every

13  sheriff's deputy "shall possess all the power, and may perform any of the duties, prescribed by

14  law to be performed by the sheriff, and shall serve or execute, according to law, all process,

15  writs, precepts, and orders, issued by lawful authority."  Wash. Rev. Code § 36.28.020.  And a

16  peace officer may enforce criminal law statewide "[w]hen the officer is transporting a prisoner."

17  Wash. Rev. Code § 10.93.070(4).  In short, state law is relevant here only to the extent it

18  authorizes the Sheriff to maintain custody over Plaintiff, which it does.

19      Moreover, the source of authority for the Court to issue the writ, and the Sheriff's

20  obligation to follow it, comes not from state law at all.  Rather, federal law gives this Court

21  authority to compel Plaintiff's custodian to "bring him into court to testify or for trial."  28

22  U.S.C. § 2241(c)(5).  And so long as the Court has territorial jurisdiction over the custodian,

23  which it clearly does have over the Pierce County Sheriff, its order is binding. *Rumsfeld*, 542

24

U.S. at 442.  Defendants appear to argue that they will lose jurisdiction over Plaintiff once county agents cross the threshold of the federal courthouse door, but that argument has no basis in law.  Again, state law authorizes the Sheriff to enforce criminal law anywhere in the county, *see supra*.  And this Court's habeas order runs only against the Sheriff.  *Cf. Braden v. 30th Jud. Cir. Ct. of Kentucky*, 410 U.S. 484, 495 (1973) (quoting *In re Jackson*, 15 Mich. 417, 439–440 (1867)) (the habeas writ "is directed to, and served upon, not the person confined, but his jailer. . . . The officer or person who serves it does not unbar the prison doors, and set the prisoner free . . . The whole force of the writ is spent upon the respondent.")  Were it otherwise, the Ninth Circuit would not have held in *Wiggins* that district courts could appropriately order state authorities to "transport and guard" inmates in the federal courthouse.  171 F.2d at 469.

### 3.  Specifying the Terms of Plaintiff's Appearance

The Court agrees with Plaintiff that shackling him in view of the jury would be prejudicial and is not justified by any special need.  *Claiborne*, 934 F.3d at 890.  Nonetheless, some security protocols are appropriate in light of Plaintiff's continued custody and the violent offenses for which he is charged.  All Parties appear amenable to having Plaintiff wear an ankle restraint while at the counsel table, and both tables will be skirted such that jurors cannot view Plaintiff's ankles nor discern any differential treatment.  *See id.* at 897 (directing courts to take mitigating measures where restraints are used.)  Because the witness box in the courtroom is open on one side, allowing jurors a full view of the witness from head to toe, it would not be possible to conceal restraints there from the jurors.  Therefore, the Court will allow Plaintiff to testify without restraints as he requests, but will have a deputy seated behind the witness box to protect the Court.  At the April 7, 2025 status hearing, the Court discussed this measure with counsel for both Parties and directed them to draft a curative instruction to jurors explaining that

Plaintiff remains in custody and not to draw a negative inference from that fact.  (Dkt. No. 93.)
Further, the Court will grant Plaintiff's request that he be moved to and from the counsel table
out of view of jurors, so that they do not see him being shackled/unshackled.  Before trial begins,
and out of view of the jurors, the Court will warn Plaintiff that any disruptive behavior may
result in additional restraints and/or revocation of his privilege to attend the trial in person.

As to Plaintiff wearing civilian clothing during trial, the Court believes that request is
appropriate when he is physically present and can be accommodated in such a way as to mitigate
the concerns raised by Defendants.  Courts have held that requiring a civil plaintiff to wear
prison clothing creates "potential juror bias [that] would be inescapable."  *Sultaana v. Jerman*,
No. 1:15-CV-382, 2019 WL 6343475, at *6 (N.D. Ohio Nov. 27, 2019).  But it is Plaintiff's
responsibility to furnish those clothes, facilitated by his attorney.  *See id.*  ("if he wishes to wear
civilian clothes, he will need to arrange the attire himself.").  The Court will remove any risk
associated with allowing civilian clothing in the jail by permitting Plaintiff to change into and
out of that clothing in the holding cell at this courthouse.  *See e.g., Smith v. Barney*, No. 3:07-
CV-00049 GTE, 2009 WL 2136162, at *2 (E.D. Ark. July 14, 2009) ("If Plaintiff can make
arrangements for civilian attire to be present at the courthouse, then he will be permitted to
change into such attire each morning before trial.").  On days when Plaintiff views trial
proceedings via videoconference, he will not have access to civilian clothing within the jail.

# IV    ORDER

It is hereby **ORDERED** that the Pierce County Sheriff, or his deputies, will:

1.  Transport Mr. Starkgraf to and from trial in this Court on May 28, 2025;

2.  Make security arrangements for Mr. Starkgraf during trial in coordination with the United States Marshals Service;

3.  Facilitate Mr. Starkgraf bringing to trial a box of legal materials related to this lawsuit to be maintained by Mr. Starkgraf or his counsel while Mr. Starkgraf is present at trial;

4.  Permit Mr. Starkgraf to receive from his attorney and wear civilian clothing during his physical appearance at trial, which he will change into and out of in the holding cell at the federal courthouse.

5.  Permit Mr. Starkgraf to have videoconference access to portions of the trial that occur on days when he is not physically present, and to communicate with his attorney confidentially during trial as needed.

In addition, to avoid prejudice or bias before the jury, the Court **ORDERS** the following measures be taken during trial:

1.  Mr. Starkgraf will be permitted to appear without physical restraints in the presence of the jury when testifying unless Mr. Starkgraf presents a specific security risk at that time.  While he is seated at the witness box, a sheriff's deputy or other security officer will sit behind him.  The jury will be instructed that he is in custody and not to draw a negative inference from that fact.

2.  Mr. Starkgraf will be permitted to sit next to his counsel at counsel table during trial. While he is seated at the counsel table, he will be restrained with ankle shackles, and table skirts will be used at counsel tables for both Plaintiff and Defendants so that the restraint is not visible to the jury.

   3.  Mr. Starkgraf will not be escorted by law enforcement/security personnel in the presence of the jury unless Mr. Starkgraf presents a specific security risk at that time.

Dated this 15th day of April, 2025.



David G. Estudillo
United States District Judge