1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11   KRISTOPHER S. STARKGRAF,                     CASE NO. 3:23-cv-05593-DGE

                         Plaintiff,               ORDER ON MOTIONS IN LIMINE
12          v.                                    (DKT. NOS. 99, 100)

13   WHITE et al.,

14                       Defendant.

15

16                        **I      INTRODUCTION**

17         The Court ruled on the Motions In Limine ("MILs") (Dkt. Nos. 99, 100) in this matter at

18   the final pretrial conference held on May 16, 2025.  (*See* Dkt. No. 113.)  The Court now issues

19   this written order to memorialize its rulings.

20                        **II      UNOPPOSED MOTIONS**

21     1.  **Defendant's No. 4:** Exclude testimony or argument that Defendants have not called

22         persons to testify who are available to both parties.

23              a.   The motion is **GRANTED**, and the ruling applies mutually to both parties.

24

ORDER ON MOTIONS IN LIMINE (DKT. NOS. 99, 100) - 1

2. **Defendant's No. 5:** Parties should provide at least 24-hours' notice to the opposing party before a witness is permitted to testify.

    a. The motion is **GRANTED**. The Court understands that for such a short trial, 24 hours' notice may in some instances be impractical, but the Court expects the Parties to extend professional courtesy to one another by giving notice to the extent feasible.

3. **Defendant's No. 6:** Exclude testimony or argument implying the relative legal resources of the parties in their resolution of this case.

    a. **GRANTED**.

4. **Defendant's No. 7:** Exclude argument, testimony, or comments which invite the finder of fact to conceptually put themselves in the place of the Plaintiff in considering any of the issues. [e.g. "Golden Rule" testimony]

    a. **GRANTED**.

5. **Defendant's No. 9:** Display of any exhibit or demonstrative evidence, including but not limited to any photographs, records or chronology charts, should be prohibited until the exhibit has been admitted into evidence or permission by the Court has been obtained to use such exhibits.

    a. **GRANTED**.

6.  **Plaintiff's No. 7**: Exclude Witnesses Lacking Contact Information

    a.  Defendant withdrew his designation of Deondre/Deonte Swansey as a witness. (Dkt No. 101 at 8.)  The motion is therefore **DENIED as moot.**

### III     DEFENDANT'S CONTESTED MOTIONS

1.  **Defendant's No. 1:** The Court should exclude testimony or evidence regarding Plaintiff's claims dismissed on summary judgment.

    a.  The motion is **GRANTED**.  The Court agrees that dismissed claims are not relevant to the remaining claim and would be more prejudicial than probative.  Fed. R. Ev. 401; 403.  As stated on the record, the Court will grant in part the redaction of Exhibit 6.  The language "under the 8th and 14th amendment. and retaliated to right to speach [sic] under the 1st amenent. [sic]" and the clause "(my 1st amendment right)" will both be redacted from the Exhibit.  (*See* Dkt. No. 100-1 at 2.)

2.  **Defendant's No. 2:** Testimony or other evidence should be allowed regarding Plaintiff's other lawsuits/claims against former defendants Correctional Sgt. Jessica Place, Correctional Deputy Patty Anton, and Correctional Deputy Shanlynn Avega.

    a.  The motion is **DENIED**.  As stated on the record, the Court finds that to the extent reference to these dismissed claims or parties in Defendant's case in chief would be probative of a pattern or habit, that probative value is outweighed by prejudice to the Plaintiff.  Fed. R. Ev. 403.  This ruling does

1    not prevent Defendant from using these past lawsuits or claims for

2    impeachment purposes if Plaintiff opens the door to that in his testimony.

3

4    3. **Defendant's No. 3:** Exclude testimony from Plaintiff regarding causation and/or

5    other opinion testimony.

6         a.   The motion is **DENIED**.  Plaintiff may give lay testimony as to his injuries

7              and symptoms.  As discussed on the record, neither the Court nor the Parties

8              expect Plaintiff to give expert testimony on medical issues, and such

9              testimony would not be permissible.

10

11   4. **Defendant's No. 8:** Exclude argument, testimony, or comment concerning the

12   Plaintiff's and Defendants' settlement attempt(s) or offers in this case.

13        a.   The motion is **GRANTED in part**, to the extent it enforces Federal Rule of

14             Evidence 408(a).  As discussed on the record, the Court cannot yet know

15             whether any testimony would call for impeachment with reference to

16             settlement discussions under Rule 408(b), and while that may not apply at all,

17             the Court **RESERVES** as to that issue.

18

19                    **IV     PLAINTIFF'S CONTESTED MOTIONS**

20

21   1. **Plaintiff's No. 1:** Exclude Defendant's Undisclosed, Non-Retained Expert

22   Testimony.

23

24

1      a.  The motion is **GRANTED**.  Defendant's witnesses will be admitted for lay

2      testimony and not expert testimony.  The Court does not reach the issue of

3      whether Defendant's witnesses can offer rebuttal expert testimony if Plaintiff

4      offers expert testimony, which seems highly unlikely.  Because Dr.

5      Balderrama was not Plaintiff's treating physician, he is not permitted to offer

6      either lay or expert testimony in Defendant's case in chief.

7

8     2.  **Plaintiff's No. 2:** Exclude Testimony on Ultimate Issue of Law

9      a.  The motion is **GRANTED**.  While Federal Rule of Evidence 704 permits

10      ultimate issue testimony, it only does so as to issues of fact, not law.  *See*

11      *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir.

12      2008) ("an expert witness cannot give an opinion as to her *legal conclusion,*

13      i.e., an opinion on an ultimate issue of law.")  Therefore, Defendant's

14      witnesses may not testify as to a legal conclusion of whether the use of force

15      was excessive.  This is consistent with the Court's prior rulings on this

16      subject.  *See Van Loo v. United States*, No. 3:23-CV-05618-DGE, 2025 WL

17      691648, at \*7 (W.D. Wash. Mar. 4, 2025) (citing *Dold v. Snohomish Cnty.*,

18      No. 2:20-CV-00383-JHC, 2023 WL 123335, at \*2 (W.D. Wash. Jan. 5, 2023)

19      and *Fontana v. City of Auburn*, No. C13-0245-JCC, 2014 WL 4162528, at \*6

20      (W.D. Wash. Aug. 21, 2014)).  Nothing in this ruling prevents Defendant's

21      witnesses from offering testimony as to the facts and context of the use of

22      force.

23

24

3.  **Plaintiff's No. 3:** Exclude Reasons for Plaintiff's Incarceration/Prior Bad Acts

    a.  As stated on the record, the motion is **GRANTED** as to Plaintiff's prior bad acts.  The ruling does not prevent questioning regarding the alleged December 6, 2024 court-date incident.  During the hearing, Defendant withdrew his motion to admit Exhibit 5 and then attempted to un-withdraw; the Court will not admit the Exhibit in Defendant's case in chief, but it may be used for impeachment if relevant.

4.  **Plaintiff's No. 4:** Exclude disciplinary history, other than that directly related to the June 18, 2023 incident.

    a.  The motion is **GRANTED**.  Defendant only opposes to the extent that he wants to be able to reference the sanction he issued as a result of the June 18, 2023 incident.  (*See* Dkt. No. 101 at 7.)  Since that is part of the incident at issue, it is not excluded.

5.  **Plaintiff's No. 5:** Exclude Reference to Dismissed Claims or Parties

    a.  Consistent with the Court's grant of Defendant's MIL No. 1 and denial of Defendant's MIL No. 2, this motion is **GRANTED**.

6.  **Plaintiff's No. 6**: Exclude Reference to Pierce County's Payment of Plaintiff's Medical Expenses

    a.  The motion is **GRANTED**.  Defendant opposes only "[t]o the extent Plaintiff may imply and/or argue that he incurred monetary damages for medical

expenses." (Dkt. No. 101 at 8.) That does not appear to be within the scope of the motion.

7. **Plaintiff's No. 8:** Exclude Hearsay Testimony

This motion concerns Defendant's Exhibit 4, which contains two prison reports. (Dkt. No. 99 at 10–11.) Both were written by Defendant White. Though offered in the same exhibit, the Court will analyze each separately. The Court concludes that the second report (chronologically), describing White's use of force on Plaintiff, is inadmissible in its entirety, and the first report concerning an altercation between Plaintiff and another inmate is admissible with redactions. Therefore, the motion is **GRANTED in part**.

A. The "Observation Report" is Admissible but Swansey's Statements Are Not.

The first report is titled "Pierce County Detention and Corrections Center Observation Report" and relates to an altercation between Plaintiff Starkgraf and another inmate, Deonte Swansey. (Dkt. No. 99 at 11.) Within the report is a statement, in which Swansey relays to White a statement he claims Starkgraf made. (*See id.*) The report was written at 1:55 on June 18, 2023, concerning an incident at 1:50, but not submitted until 3:06. (*See id.*) White discusses responding to the altercation between inmates; White asked Swansey why they were fighting and Swansey was initially not forthcoming, but then White "asked Swansey what was really going on" and Swansey stated "[w]e got into it because he keeps saying racial shit, and I cant be around him." (*Id.*) The report documents that Swansey and White were moved to different units and Starkgraf was evaluated by a nurse. (*Id.*) Further, the report notes "Starkgraf told the same story [about the incident] and later changed his story and told Sgt. Place that he was jumped in the lower tier bathroom by 5 black guys." (*Id.*)

1        Defendant argues that the report is a business record, and the statement within it is a

2    present-sense impression.  (Dkt. No. 101 at 8–9.)[1]  Plaintiff argues the entire report is

3    inadmissible hearsay.  (Dkt. No. 99 at 7–8.)

4        The report is itself hearsay, as it is an out of court statement and offered for the truth of

5    what it asserts, and Swansey's statements are hearsay within hearsay.  At the first step, the Court

6    will find that the report is a business record.  Fed. R. Ev. 803(6).  The Court's concerns about

7    treating a record of use of force as a business record, *see infra*, do not apply to this report.

8    Though a close question, the Court finds that the "Observation Report" is not so akin to a police

9    report that would be inadmissible in a criminal matter, and is more like a "routine,

10   nonadversarial" report "'reflecting ministerial, objective observations' of law enforcement

11   personnel."  *United States v. Fryberg*, 854 F.3d 1126, 1132 (9th Cir. 2017) (analyzing the public

12   records rule, Fed. R. Ev. 803(8)).  Therefore, the report itself can be admitted.

13       But Swansey's statements within the report are inadmissible hearsay and are not a present

14   sense impression.  A present-sense impression "must be nearly contemporaneous with the

15   incident described and made with little chance for reflection."  *Bemis v. Edwards*, 45 F.3d 1369,

16   1372 (9th Cir. 1995).  It must be made "while the declarant was perceiving the event or

17   condition."  *Id.* at 1373 (quoting 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's*

18   *Evidence* ¶ 803(1)[01], at 803–93 (1994)).  It must also be made on personal knowledge.  *Id.*

19   Courts have explained that "the declarant should be describing an event that is ongoing and

20   startling or just occurred.  Little time or no time must exist between the occurrence and the

21

22   ---
[1] Defendant did not raise the issue of whether the records are admissible under the public records
23   exception, Rule 803(8), though Rules 803(6) and 803(8) are sometimes analyzed together.  *See*
     *e.g.*, *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995); *Fleming v. Hinds Cnty.*, No.
     3:16CV554TSL-RHW, 2017 WL 1730971, at *2 (S.D. Miss. May 1, 2017).
24

1   statement, which operates to negate the likelihood of a deliberate or conscious misrepresentation.

2   The crucial provision of this exception is immediacy." *United States v. Lentz*, 282 F. Supp. 2d

3   399, 410 (E.D. Va. 2002), *aff'd,* 58 F. App'x 961 (4th Cir. 2003) (internal citations omitted).

4   However, "[f]or statements to qualify as present sense impressions, precise contemporaneity is

5   not required." *United States v. Ibanez*, 328 F. App'x 673, 675 (2d Cir. 2009).

6      There is a dispute here about exactly how much time elapsed between Swansey's

7   statement and memorialization of it in the report.  The report indicates that Swansey made the

8   statement around 1:50 and it was written at 1:55, but not submitted until 3:06—a gap of

9   approximately 1 hour 15 minutes.  (*See* Dkt. No. 99 at 11.)  The gap is concerning because

10   presumably during that time White had access to the report and could have edited it.  And a gap

11   of that length in time would be too long for the statement to qualify as a present sense

12   impression.  *See e.g.*, *United States v. Green*, 556 F.3d 151, 157 (3d Cir. 2009) (suggesting that a

13   gap of 50 minutes was too long).

14      But even assuming the temporal requirement is satisfied, the Court holds that Swansey's

15   statement is not a "present sense impression" because it was made on prompting from White.  As

16   discussed in the report, Swansey initially claimed "we were working it out" when asked about

17   the incident, but then after White asked "what was really going on," Swansey volunteered that he

18   was irritated because Starkgraf "keeps saying racial shit."  (*See* Dkt. No. 99 at 11.)  Other courts

19   have held that prompting such as this makes the present sense impression inapplicable.  *Green*,

20   556 F.3d at 157 ("This undisputed sequence of events affirmatively indicates that Brown made

21   his statement after he was expressly asked to reflect upon the events in question, and thereby

22   fatally disqualifies the declaration for admission as a present-sense impression"); *United States v.*

23   *Boyce*, 742 F.3d 792, 797 (7th Cir. 2014) ("A statement must also be made without calculated

24

1    narration to qualify under the present sense impression exception"); *United States v. Lovato*, 950

2    F.3d 1337, 1348 (10th Cir. 2020) (Bacharach, J., concurring) ("[t]he exception for present-sense

3    impressions applies to individual statements, not conversations").

4          For those reasons, the Court will admit the Observation Report but require redaction of

5    Swansey's statements.  The precise redactions were discussed on the record.

6                    B.    The Report of White's Use of Force Is Inadmissible

7          The second report chronologically (though first on the docket) is titled "Pierce County

8    Detention and Corrections Center Incident Report" and discusses the incident that is the subject

9    of this litigation.  (Dkt. No. 99 at 10.)  It is written by White and describes an incident in which

10   Plaintiff asked him to move his books out of his former cell (after being moved, post-Swansey

11   incident).  (*See id.*)  White did not answer to Plaintiff's satisfaction and Plaintiff called him a

12   "piece of shit," White then applied handcuffs to Plaintiff, allegedly in a painful and excessive

13   manner.  (*See id.*)  Defendant argues this is a business report, citing *Mitchell v. Morgan*, 844 F.

14   Supp. 398, 401 (M.D. Tenn.), *aff'd sub nom. Thandiwe v. Morgan*, 41 F.3d 1508 (6th Cir. 1994).

15   *Morgan* has very limited reasoning, and the Court finds a different case to be more persuasive.

16          In *Lewis v. Velez*, a prisoner civil rights case, the court held that "Incident Reports such

17   as the ones at issue here do not properly constitute 'business records.'"  149 F.R.D. 474, 486

18   (S.D.N.Y. 1993).  The court relied on *Palmer v. Hoffman,* 318 U.S. 109, 113 (1943), which holds

19   that a railroad accident report from a railroad official was not a business record because

20   accidents are not a regular business activity.  Were it otherwise, the business records exemption

21   "would result in the admission of self-serving records of any incident for which an organization

22   could foresee liability, as long as the records were made pursuant to some sort of regular

23   recording system."  *Lewis* 149 F.R.D. at 486.  *Lewis* reasoned that corrections officers have self-

24

1   interest in reports concerning beatings of inmates that could expose them to liability under prison

2   policies or criminal charges, and so their incident records would be inadmissible under 803(6),

3   because the rule requires a showing of trustworthiness.  *Id.; see also Fleming*, 2017 WL

4   1730971, at *2 (citing *Lewis* and reaching same conclusion); *Bracey v. Herringa*, 466 F.2d 702,

5   705 (7th Cir. 1972) (reversing grant of summary judgment against § 1983 claim concerning

6   prisoner beating, because court erred in considering prison report, which was inadmissible

7   hearsay).

8          As to the incident report in which White describes his use of force on Starkgraf, the

9   *Lewis* reasoning applies.  Without ascribing any ill-intent to White, he does have self-interest in

10  the narration of his use of force.  Therefore, the Court will grant Plaintiff's motion and exclude

11  the report in its entirety.  The Court notes that Defendant loses little or nothing from this ruling,

12  since White will testify at trial.

13

14                              **V      CONCLUSION**

15         The motions in limine are granted in part and denied in part consistent with this opinion.

16

17         Dated this 19th day of May, 2025.

18

19

20                                              David G. Estudillo
                                                United States District Judge

21

22

23

24

ORDER ON MOTIONS IN LIMINE (DKT. NOS. 99, 100) - 11